# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 19, 2013 Session

## MATTHEW W. WAMBLES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Houston County**
**No. 2009-CR-5210     Robert E. Burch, Judge**

**No. M2011-02381-CCA-R3-PC     Filed - September 27, 2013**

Matthew W. Wambles ("the Petitioner") pleaded nolo contendere to one count of aggravated sexual battery and one count of sexual exploitation of a minor.  Pursuant to the plea agreement, the trial court sentenced the Petitioner to concurrent terms of eight years' incarceration.  The Petitioner subsequently filed for post-conviction relief, alleging that he received ineffective assistance of counsel and that his pleas are constitutionally infirm.  After a hearing, the post-conviction court denied relief, and this appeal followed.  Upon our thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed; Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Jennifer Lynn Thompson (on appeal), Nashville, Tennessee, and J. Runyon (at hearing), Clarksville, Tennessee, for the appellant, Matthew W. Wambles.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Chris Monsue, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On January 6, 2010, the Petitioner entered pleas of nolo contendere[1] to one count of aggravated sexual battery and one count of sexual exploitation of a minor (by possessing over one hundred offensive images of minors), committed in May 2008. The trial court sentenced the Petitioner to concurrent terms of eight years for these offenses, to be served in the Tennessee Department of Correction. On January 5, 2011, the Petitioner filed for post-conviction relief, alleging ineffective assistance of counsel and that his pleas were constitutionally infirm, in part because they were entered without the information required by our supreme court's decision in Ward v. State, 315 S.W.3d 461 (Tenn. 2010). At the ensuing evidentiary hearing, the following proof was adduced:[2]

The Petitioner's trial lawyer ("Trial Counsel") testified that he advised the Petitioner that, upon pleading guilty to the charges he faced, the Petitioner would be sentenced to two concurrent terms of eight years. Trial Counsel also testified that he "advised [the Petitioner] of his sex offender registry implications as well as community supervision for life." During this discussion, Trial Counsel informed the Petitioner that he "would be supervised by the Board of Probation and Parole." Trial Counsel described the Petitioner's demeanor during this latter discussion as "dismissive of those issues" because the Petitioner's focus was on his prison term. The discussions about the consequences of pleading guilty occurred in late August 2009.

---

[1] As this Court has explained:

> A plea of nolo contendere admits every essential element of the offense, which is properly alleged in the charging instrument; and it is tantamount to an admission of guilt for purposes of the case in which the plea is entered. Once the plea has been entered, and the trial court has determined that it has been made voluntarily, nothing is left but to render judgment since there is no issue of fact. Lott v. United States, 367 U.S. 421, 426, 81 S.Ct. 1563, 1567, 6 L.Ed.2d 940, 944 (1961). Moreover, a conviction following a plea of nolo contendere "has all the effects of a plea of guilty insofar as the purposes of the case are concerned." Bell v. Commissioner, 320 F.2d 953, 956 (8th Cir.1963); see Jacobsen v. United States, 260 F.2d 122, 123 (8th Cir.1958). The only difference of substance is that a conviction following the entry of a plea of nolo contendere cannot be used against the accused as an admission in any civil suit for the same act. Tenn. R. Crim. P. 11(d).

Teague v. State, 772 S.W.2d 932, 943 (Tenn. Crim. App. 1988).

[2] We have limited our recitation of the proof to that which is relevant to the issues on appeal.

Trial Counsel did not recall the details of what he told the Petitioner about the sex offender registry and community supervision for life. He acknowledged that, due to the Petitioner's attitude, it was possible that he "didn't get through the whole explanation about everything that is required for community supervision for life." Trial Counsel also acknowledged that he did not inform the Petitioner about the effect the convictions would have on his ability to hold certain jobs. Nor did Trial Counsel inform the Petitioner about the costs associated with the registry and lifetime supervision. Trial Counsel did not recall whether he informed the Petitioner about mandatory counseling or sex offender treatment. He also did not recall whether he advised the Petitioner of potential criminal prosecution arising from the Petitioner's failure to register or report as required under the community supervision program.

Trial Counsel testified that he advised the Petitioner that the State "had to prove him guilty of each and every element of the offense beyond a reasonable doubt and it was their duty." Trial Counsel flatly denied telling the Petitioner that he "needed to prove himself not guilty at trial."

The Petitioner testified that, at the time he entered his pleas, he understood that he would be able to petition to be removed from the sex offender registry after fifteen years. He did not know that he would be on the registry for life. He was not informed about the impact his convictions would have on where he could live, where he could work, or where he could seek treatment. He did not know about the costs. He did know that he would not be allowed near parks. He also knew that he was not allowed within one thousand feet of schools and day care facilities.

The Petitioner testified that, at the time he pleaded nolo contendere, he "didn't know anything about community supervision for life." He did not know that, if he failed to satisfy his obligations under his community supervision, he could be subjected to criminal prosecution. He did not know that he could petition to be released from community supervision after fifteen years. He did not know the conditions that would have to be satisfied in order to be released and did not know that a petition to be released would involve a hearing. The Petitioner testified that, had he been informed about the ramifications of community supervision for life, he would not have pleaded guilty.

On cross-examination, the Petitioner acknowledged telling the trial court during the plea hearing that he had been satisfied with Trial Counsel and that he had no questions about the pleas he was entering. When asked at what subsequent point he decided he should have

gone to trial, the Petitioner answered,

> I think it was county jail when my mother, my step-mother started looking into the paperwork and told me that, you know, that they thought that there was reasonable doubt and that they should have – at least have an attorney look at it.

The Petitioner claimed that Trial Counsel had never explained to him that the State had to prove the charges against him beyond a reasonable doubt. The Petitioner testified that Trial Counsel told him that it was the Petitioner's burden to prove his innocence.

The transcript of the Petitioner's plea hearing was admitted into evidence. During the plea colloquy, the trial court did not inform the Petitioner about community supervision for life. The trial court also misinformed the Petitioner that he could petition to be removed from the sex offender registry after fifteen years. The transcript also includes the following colloquy:

> THE COURT: Do you understand that you would be presumed to be innocent until such time, if ever, that the State established your guilt by competent evidence beyond a reasonable doubt to the satisfaction of a jury?
>
> THE DEFENDANT: Yes, sir.

After the hearing, the post-conviction court entered a comprehensive written order denying relief. The post-conviction court found that Trial Counsel

> advised Petitioner that there would be numerous restrictions on Petitioner if he were to be convicted of a sex offense and would be subject to a lifetime supervision requirement. Trial counsel admitted that it was possible that trial counsel did not get through the entire sex offender registration requirements and supervision explanation because Petitioner was so dismissive of these matters. He did not advise Petitioner that, after a period of time, Petitioner might petition to be removed from the sex offender registry and/or community supervision for life. Trial counsel did not tell Petitioner of any criminal liability for failing to comply with the requirements of the sex offender registry. Trial counsel was not "real sure" that Petitioner understood the full implications of the sex offender registry and lifetime supervision because Petitioner was just not interested in these matters. Petitioner's testimony on these matters to the contrary is unconvincing.

The post-conviction court concluded that, although Trial Counsel may not have given the Petitioner a comprehensive explanation of the ramifications of lifetime community supervision, Trial Counsel provided sufficient information to avoid being deficient in this regard. The post-conviction court also concluded that the Petitioner had failed to establish that, had he been more completely informed, he would have refused to plead guilty.

The Petitioner timely appealed from the post-conviction court's order denying relief and contends that Trial Counsel was ineffective in failing to inform him adequately about the lifetime community supervision consequence of his pleas; that his pleas are constitutionally infirm because the trial court failed to inform him about the lifetime community supervision consequence of his pleas, in violation of Ward; and that his pleas are constitutionally suspect because they were not supported by a written plea petition and because the trial court misinformed him about the possibility of being removed from the sex offender registry.

**Standard of Review**

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006); see Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

**Analysis**

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel

at trial.[3]  Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases."  Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act.  See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs:  (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel.  Goad, 938 S.W.2d at 370.  Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong.  Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'"  Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)).  Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.  It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.  Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).  When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time."  Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006)  (citing Strickland, 466 U.S. at 689).  Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

---

[3] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution.  See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

The Petitioner contends that Trial Counsel's performance was deficient because Trial Counsel did not inform him about the lifetime community supervision consequence of his pleas. He testified at the post-conviction hearing that he was completely unaware of the lifetime supervision requirement at the time he pleaded nolo contendere. The Petitioner also contends that he was prejudiced by Trial Counsel's failure in this regard because, had Trial Counsel properly informed him, he would not have pleaded nolo contendere. The post-conviction court determined that Trial Counsel did not perform deficiently in this regard, finding specifically that Trial Counsel advised the Petitioner that he "would be subject to a lifetime supervision requirement." The post-conviction court also found "unconvincing" the Petitioner's contrary testimony. Based upon our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's finding on the deficiency issue. Accordingly, the Petitioner is not entitled to relief on this issue.[4]

---

[4] As a result, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370.

*Ward Violation*

The Petitioner also argues that his pleas are constitutionally infirm because they were entered without the mandatory advice by the trial court that he would be subject to lifetime community supervision, contrary to our supreme court's holding in Ward, 315 S.W.3d at 464. Because the Petitioner entered his pleas before the Ward decision, his argument requires a retroactive application of Ward. The issue of whether the holding of Ward must be applied retroactively in proceedings for post-conviction relief is currently before our supreme court. See Derrick Brandon Bush v. State, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280 (Tenn. Crim. App. June 15, 2012), perm. app. granted (Tenn. Oct. 17, 2012).

Irrespective of the retroactivity of the Ward decision, however, we hold that the Petitioner is not entitled to relief on this basis. While Ward requires a trial court to inform a defendant pleading guilty to a predicate offense that he or she will face community supervision for life, Ward, 315 S.W.3d at 464, a trial court's failure in this regard will not entitle the defendant to relief if the State demonstrates that the error was harmless beyond a reasonable doubt. Id. at 476. Thus, if the State proved beyond a reasonable doubt that, at the time he pleaded nolo contendere, the Petitioner already knew about the lifetime community supervision consequence of his plea, then the Petitioner is not entitled to relief. Id.

In this case, Trial Counsel testified that he told the Petitioner about the community supervision for life consequence of the Petitioner's plea. Although the Petitioner testified to the contrary, the post-conviction court accredited Trial Counsel's testimony and specifically found the Petitioner's contrary testimony "unconvincing." We defer to the post-conviction court's factual finding about witness credibility. See Momon, 18 S.W.3d at 156. Accordingly, we hold that the State established that the trial court's error in failing to inform the Petitioner about the lifetime community supervision requirement was harmless beyond a reasonable doubt. The Petitioner is entitled to no relief on this basis.

*Remaining Claims*

The Petitioner also claims in his brief to this Court that his pleas are suspect because "there was no written plea petition signed by [the] Petitioner." While we acknowledge that the record before us does not contain a written plea petition, the record is devoid of actual proof that no such petition exists. The absence of a document from the record on appeal is not a sufficient basis upon which to assume that it does not exist. Post-conviction counsel asked neither the Petitioner nor Trial Counsel about the existence of a written plea petition. Accordingly, the Petitioner has failed to establish by clear and convincing evidence that his

pleas are infirm because they are not memorialized in writing. The Petitioner is not entitled to relief on this basis.

The record does support the Petitioner's claim that the trial court misinformed the Petitioner that he could petition to be removed from the sex offender registry after fifteen years. The Petitioner pleaded nolo contendere to aggravated sexual battery. Aggravated sexual battery is defined as a "violent sexual offense," Tenn. Code Ann. § 40-39-202(28)(C) (Supp. 2008), and convicted offenders are required to register as a sex offender and comply with monitoring requirements for life. Id. § 39-13-524(a) (Supp. 2008). Early termination of the registration requirement is not available to the Petitioner. See id. § 40-39-207(g)(1)(B) (Supp. 2008). However, as noted by the post-conviction court, the trial court made this statement after taking the pleas and imposing sentence. Therefore, we agree with the post-conviction court that the Petitioner's pleas were not "based upon any false statement or incorrect information announced by the trial judge." See Jaco v. State, 120 S.W.3d 828, 832-33 (Tenn. 2003) (statement made by trial judge after entry of plea "could not have influenced [the petitioner's] decision to plead guilty and did not vitiate the knowing and voluntary nature of his plea"). We agree with the State that "[a]ny misinformation from this comment was harmless beyond a reasonable doubt." See Rigger v. State, 341 S.W.3d 299, 315 (Tenn. Crim. App. 2010). The Petitioner is not entitled to relief on this basis.

*Erroneous Judgment Order*

The original judgment order entered on the Petitioner's conviction of sexual exploitation of a minor indicated that he was sentenced as a "standard offender" and that his release eligibility was "child predator 100%." The trial court then entered an amended judgment order indicating that the Petitioner was sentenced as a "standard offender" and that his release eligibility was "standard 30%." The trial court subsequently entered a second amended judgment order leaving blank the Petitioner's offender status and indicating that his release eligibility was "child predator 100%."

Sexual exploitation of a minor is not a predatory offense that renders the convicted defendant a child sexual predator. See Tenn. Code Ann. § 39-13-523(a)(4) (Supp. 2008). Accordingly, the judgment order should not indicate that the Petitioner is a "child predator 100%." However, sexual exploitation of a minor involving more than one hundred images, the offense of which the Petitioner was convicted, is a conviction for which one hundred percent of the sentence must be served (less sentence reduction credits earned and retained). See id. § 40-35-501(i)(2)(M) (Supp. 2008). Accordingly, the judgment order should reflect that the Petitioner's release eligibility on his exploitation offense is "100%."

The Petitioner's offender status is "standard," as reflected by his sentence of eight years for each of the two Class B felonies to which he pleaded nolo contendere. See Tenn. Code Ann. §§ 40-35-105(b) (2006), 40-35-112(a)(2) (2006) (providing that a standard offender is to be sentenced "within Range I" and that the Range I sentence for a Class B felony is eight to twelve years). The Petitioner's release eligibility for the exploitation offense is one hundred percent. Accordingly, the judgment order entered on his exploitation offense should indicate his offender status as "standard" and that his release eligibility is "100%." This latter designation should be indicated by the trial court writing in the "Special Conditions" area of the judgment order the words, "To be served at one hundred percent (100%)."

## Conclusion

For the reasons set forth above, the Petitioner has failed to establish that he is entitled to post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court denying relief. This matter is remanded for the entry of a corrected judgment order as set forth above.

_____
JEFFREY S. BIVINS, JUDGE